**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANATOMY IT, LLC, | |
| *Plaintiff*, | Civil No. |
| v. | |
| CYBERLIFE SYSTEMS, INC.; ERIC JOHNSON; and ADAM PIAZZA, | **COMPLAINT** |
| *Defendants*. | |

1.     Plaintiff Anatomy IT, LLC ("Anatomy IT") brings this action against its former employees, Defendants Eric Johnson ("Johnson") and Adam Piazza ("Piazza"), and their new business, Defendant CyberLife Systems, Inc. ("CyberLife," together with Johnson and Piazza, "Defendants"), to put a stop to their brazen and illegal efforts to steal Anatomy IT's clients, customers, and accounts, and to enforce the confidentiality and customer non-solicitation obligations that Johnson and Piazza have repeatedly violated since their separation from Anatomy IT.

2.     While employed by Anatomy IT, Johnson and Piazza had access to, and were required to know and use, Anatomy IT's confidential and trade secret information, including highly sensitive information regarding Anatomy IT's nationwide customer base.

3.     Upon information and belief, following Johnson's and Piazza's separation from Anatomy IT, they immediately endeavored to start their own competing business and formed CyberLife, which, like Anatomy IT, provides managed IT and ancillary services.  Although Piazza and Johnson expressly agreed to abide by their non-solicitation, non-disclosure, and other post-employment obligations to Anatomy IT, they have done nothing of the sort.  Instead, they unlawfully retained the confidential and proprietary client information they had access to during their employment with Anatomy IT, misappropriated it for their own benefit, and engaged in a targeted campaign to steal Anatomy IT's clients, customers, and accounts.

4.      Unfortunately, Defendants' efforts to sabotage Anatomy IT's client relationships have had some success.  As of the date of this filing, ten Anatomy IT clients have been unlawfully solicited by Defendants, seven of those ten clients have severed their relationships with Anatomy IT, and two of the seven clients who severed their relationships with Anatomy IT have been converted to CyberLife.

5.      Worse, Defendants' brazen and illegal conduct continues to this day.  Not only have Defendants failed to return the highly sensitive information they misappropriated from Anatomy IT, but they have also continued to solicit Anatomy IT's clients, despite having been served with cease-and-desist letters expressly putting them on notice of their blatant contractual violations and tortious conduct.

6.      Anatomy IT is left with no choice but to bring this action against Defendants seeking damages and injunctive relief to protect its legitimate interests in its confidential information, customer goodwill, and trade secrets, and to prevent further irreparable harm.

## THE PARTIES

7.      Plaintiff Anatomy IT is a limited liability company organized and existing under the laws of the State of New York, with its principal place of business in White Plains, New York.

8.      Defendant CyberLife is a corporation organized and existing under the laws of the State of Delaware which, upon information and belief, has its principal place of business in Minneapolis, Minnesota.

9.      Defendant Johnson is CyberLife's President and Chief Executive Officer ("CEO"). Upon information and belief, Johnson is a citizen of Minnesota who is domiciled and resides in Princeton, Minnesota.

10.      Defendant Piazza is CyberLife's Vice President and Chief Technology Officer ("CTO").  Upon information and belief, Piazza is a citizen of Connecticut who is domiciled and resides in Milford, Connecticut.

## JURISDICTION AND VENUE

11.      This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332.

Anatomy IT and Defendants are citizens of different states and, although the harm caused to Anatomy IT's business as a result of Defendants' misconduct is difficult to calculate, the amount in controversy is believed to exceed $75,000.

12.     This Court also has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Anatomy IT asserts a claim against Defendants under the Defend Trade Secrets Act (the "DTSA"), 18 U.S.C. § 1836, *et seq.*  Supplemental jurisdiction exists over the remaining claims in this action pursuant to 28 U.S.C. § 1367(a) because they are related to and arise from the same set of operative facts as the DTSA claim.

13.     This Court has personal jurisdiction over Defendants, and venue is proper in this District under 28 U.S.C. § 1391(a), because Johnson and Piazza consented to the jurisdiction of the federal and state courts in Westchester County, New York when they executed the Anatomy IT agreements that contain the restrictive covenants relevant to this action.

## FACTS COMMON TO ALL ALLEGATIONS

### A.  Anatomy IT's Business and Confidential Information

14.     Anatomy IT is one of the nation's largest and fasting-growing healthcare information technology ("IT") companies.

15.     It is engaged in the highly competitive business of providing IT consulting, monitoring, maintenance, data preservation, hardware and software networking, and outsourced IT services, along with other related services, to medical practices, physician groups, and hospitals located across the country.

16.     With more than 30 years of experience in the healthcare industry, Anatomy IT is an expert in identifying and addressing the unique risks, challenges, and opportunities facing healthcare organizations.

17.     Anatomy IT has over 1,750 clients and, to date, has supported more than 38,000 healthcare staff nationwide.  Anatomy IT is a customer-centric technology partner, meaning that it strives to bring people and technology together to promote exceptional care.  For that reason, Anatomy IT's customers are at the forefront of its business.

3

18.     Anatomy IT maintains an application called "ConnectWise," which contains detailed information regarding all of its 1,750+ national customer accounts, including but not limited to information regarding current and former contracts, customer preferences, pricing information, and contact information.  As former employees of Anatomy IT, both Johnson and Piazza had access to ConnectWise and frequently used the drive during the scope of their employment.

19.     The customer information Anatomy IT has compiled in ConnectWise is the result of Anatomy IT's investment of significant time and resources, is not generally available to the public, is safeguarded by Anatomy IT with, among other things, password and dual authentication protections, and would give any competitors who improperly acquired such information an unfair competitive advantage.

**B. Johnson's and Piazza's Employment with Anatomy IT**

20.     Defendant Johnson first began working for Anatomy IT in or about October 2021 when Anatomy IT engaged Johnson's company, CyberLife, LLC (a different entity than Defendant CyberLife), to perform a four-week consulting project for Anatomy IT's Central Services department.

21.     After Johnson completed the project, Anatomy IT hired Johnson to serve as the company's Vice President of Managed Services, effective December 6, 2021.  In that role, Johnson was part of Anatomy IT's upper-management team and reported directly to the Company's CEO.

22.     Anatomy IT's Managed Services department directs the activities and drives the growth of the company's services and client relationships.  As Vice President of Managed Services, Johnson was responsible for, among other things, managing a team of client-facing technicians, assessing Anatomy IT's offerings and services, identifying and implementing cost efficiencies, and building relationships with clients and vendors.

23.     Defendant Piazza began working for Anatomy IT approximately two months later in February 2022, when Anatomy IT's parent company purchased SMB Networks ("SMB"), a company for which Piazza had been working as a Senior IT Engineer.  As SMB's successor in

interest, Anatomy IT took on all of SMB's employees and customers.

24.     Following this transaction, Piazza became a Senior Network Engineer for Anatomy IT and signed an employment agreement to that effect on or about April 1, 2022.  Within the next several months, all transitioned SMB employees, including Piazza, were integrated into Anatomy IT's ConnectWise system and had access to Anatomy IT's entire client database.

25.     As Senior Network Engineer, Piazza was an IT technician who, along with the other technicians on his team, interacted directly with, and provided products and services to, Anatomy IT's clients.  In this role, Piazza reported directly to Johnson.

**C. Johnson's and Piazza's Contractual Obligations to Anatomy IT**

26.     In order to protect its confidential and proprietary business information, Anatomy IT asks certain employees who gain access to the information to agree to covenants not to misappropriate it.

27.     Both Johnson and Piazza executed agreements that contain certain narrowly tailored, post-employment restrictive covenants designed to protect Anatomy IT's goodwill, its longstanding customer relationships, and its confidential and proprietary information (the "Agreements").

28.     Johnson's restrictive covenants are set forth in his Anatomy IT employment agreement, which he executed on or about December 2, 2021 (the "Johnson Agreement," which is attached hereto as **Exhibit A**).

29.     By executing the Johnson Agreement, Johnson expressly acknowledged that he would obtain "Confidential Information" during the course of his employment with Anatomy IT (*see* Ex. A. at § 9.1), which term is defined as follows:

> any confidential or proprietary trade secrets, methods, models, techniques, processes, financial, management organization information (including, but not limited to, data and other information relating to members of the Board or any subsidiary of the Company [(Anatomy IT)] . . . , operating policies or manuals, business and marketing plans, financial records, or other financial, commercial, business or technical information (a) relating to the Company Group [(the Company and their subsidiaries)] or (b) that the Company Group may receive belonging to

customers, clients, distributors, manufacturers, suppliers, vendors or others who do business with the Company Group[.]

(*Id.* at § 8.1.)

30.     Johnson further acknowledged that Anatomy IT's Confidential Information could, if improperly disseminated, "be used to compete unfairly" with the company and its affiliates.  (*See id.* at § 9.1.)  Accordingly, the Johnson Agreement prohibits the disclosure of Anatomy IT's Confidential Information to any third "Person," defined as "any individual, partnership, limited liability company, joint venture, corporation, trust, unincorporated organization or other entity," subject to certain exceptions.  (*See id.*)

31.     Moreover, Johnson agreed that upon the termination of his employment with Anatomy IT for any reason, he would:

> [D]eliver to the Company (a) all property of the Company Group then in Executive's possession or under Executive's control; and (b) all documents and data of any nature and in whatever medium of the Company Group or relating to its business, and [would] not take or retain any such property, documents or data, any documents containing or pertaining to any Confidential Information or any reproduction of any of the foregoing[.]

(*Id.* at § 8.6.)

32.     Further, Johnson acknowledged by executing the Johnson Agreement that by virtue of his employment with Anatomy IT, he would "develop relations and contacts with the principal business relationships of the Company Group, all of which constitute valuable goodwill of, and could be used . . . to compete unfairly with, the Company Group."  (*Id.* at § 9.1.)

33.     Accordingly, Johnson promised that for 12 months following his separation from Anatomy IT, he would not:

> for the purpose of providing products or services that are similar to the products or services of [Anatomy IT], contact, Solicit, . . . conduct business with or provide services to any of [Anatomy IT's] customers or prospective customers (i) with whom the Executive [(Johnson)] had direct or indirect contact in the twelve (12) months prior to the Executive's termination, or (ii) about whom Executive possesses Confidential Information that would assist Executive in the solicitation of such customer or prospective customer.

(*Id.* at § 8.1.)

34.    By executing the Johnson Agreement, Johnson agreed that Anatomy IT's restrictive covenants were "intended to protect the legitimate interests" of Anatomy IT and its affiliates, including their Confidential Information, and further that they were reasonably calculated to protect those interests.[1]  (*Id.* at § 9.1.)  Johnson also acknowledged that any violation of his restrictive covenants would cause Anatomy IT "irreparable injury for which adequate remedies are not available at law," entitling it to injunctive and other equitable relief.  (*Id.* at § 9.2.)

35.    Piazza agreed to be bound by similar restrictive covenants when he executed Anatomy IT's Confidentiality and Non-Competition Agreement, dated April 1, 2021 (the "Piazza Agreement," which is attached hereto as **Exhibit B**).

36.    Like Johnson, Piazza acknowledged that Anatomy IT "has devoted substantial resources to the development and preservation of its customer base and confidential information," and further that certain restrictive covenants are necessary to "preserve and protect Anatomy IT's business client relationships, intellectual property, and the confidentiality of its confidential information."  (*See* Ex. B at B, C.)

37.    Accordingly, Piazza agreed "to hold in strict confidence and safeguard" Anatomy IT's "Confidential Information" (*id.* at § 6(a)), which term is defined as follows:

> any information containing or concerning Anatomy IT and its products, services, sales, sales methods, sales proposals, purchasing, training, promotional plans and strategies, pricing strategies and pricing and price lists, accounting and financial information, marketing, clients, customers, suppliers, computer programs, hardware, software, manuals, salaries or any other records or information belonging to Anatomy IT, or to Anatomy IT's clients or Anatomy IT's business.

---

[1] As an executive-level employee, Johnson also agreed to be bound by certain restrictive covenants set forth in the LLC agreement of Anatomy IT's parent company, including a non-solicitation provision that is similar to the provision included in the Johnson Agreement, in exchange for incentive common units in the parent company.  The LLC agreement allows the Board to recharacterize Johnson's separation as termination for cause due to his violation of the restrictive covenants, and provides for forfeiture of the units. The Board is in the process of adopting a written action to recharacterize Johnson's separation as a termination for cause and to cancel the incentive units on the books of the company.

(*Id.* at § 6(b).)

38.     The Piazza Agreement also expressly prohibits the disclosure or removal from Anatomy IT's premises of any "Client Confidential Information," which is defined as "any information of or about any customer or client gained during and through the course of [his] employment." (*Id.* at § 7(b).)

39.     Moreover, Piazza agreed that upon the termination of his employment for whatever reason, he would:

> immediately deliver to Employer [(Anatomy IT)] all such records, materials, manuals, specifications, documents, and all copies thereof, in whatever form, concerning Employer's operations and/or its customers (hereinafter collectively "Employer Materials") which Employee has in his or her possession or under his or her control. Thereafter, Employee shall have no further right or access to, or any right to obtain, any of such Employer Materials.

(*Id.* at § 10.)

40.     In recognition of the importance of Anatomy IT's client base and customer relationships to its business, the Piazza Agreement also contains a narrowly-tailored customer non-solicitation restriction, which provides as follows:

> . . . [F]or a period of one (1) year following the last day of Employee's employment with Anatomy IT, Employee will not compete with Anatomy IT by, in a competitive capacity, soliciting or accepting competing business from, or by providing competing products or services, to:
>
> (i) any person or entity who or which purchased or received products or services from Anatomy IT within the one-year period prior to the last day of Employee's employment with Employer, and from whom or which Employee solicited or accepted business on behalf of Anatomy IT, and/or to whom or which Employee provided products and/or services during the 24-month period prior to the last day of Employee's employment with Anatomy IT; or
>
> (ii) any person or entity from whom or which Employee solicited business during the six-month period immediately preceding the last day of Employee's employment with Employer, even though such solicitation may not have been successful.

(*Id.* at § 5(a).)

41.     Although the customer non-solicitation provision is narrowly tailored to impose only a one-year restriction, Piazza expressly agreed that his obligation would be extended if he was ever found to be in violation of the restriction, commensurate with the length of his breach, and that Anatomy IT would be entitled to injunctive relief to remedy the harms associated with his violations.  (*See id.* at § 11.)

42.     Moreover, by executing the Piazza Agreement, Piazza acknowledged that each of the restrictive covenants was "reasonable in light of the legitimate interests of" Anatomy IT. (*See id.* at § 5(c).)

43.     In addition to asking employees to sign the Agreements that contain covenants protecting Anatomy IT's confidential information and require the return of Anatomy IT's property upon termination, Anatomy IT takes the following measures to protect its confidential and trade secret information: (i) requiring all employees to sign an employee handbook during their onboarding process, which expressly references the Agreements and outlines employees' non-disclosure obligations; (ii) restricting access to its computerized information through the use of passwords; and (iii) requiring dual authentication to access its computerized information.

**D.  Piazza's and Johnson's Separation from Anatomy IT, Employment with CyberLife, and Violations of their Restrictive Covenants.**

44.     On or about January 6, 2023, Piazza separated from Anatomy IT.

45.     Approximately two months later, on or about March 7, 2023, Johnson also separated from Anatomy IT.

46.     Upon information and belief, Johnson immediately reverted to working for CyberLife, LLC, his company that had previously contracted with Anatomy IT for consulting services, with the goal of starting a business that would compete directly with Anatomy IT for the provision of managed IT and ancillary services.  He also brought in Piazza to assist with the operation.

47.     On or about June 30, 2023, Johnson formed a new entity, Defendant CyberLife, and began operating the business as its President and CEO, with Piazza serving as Vice President

and CTO. CyberLife markets itself as offering the same or similar services to Anatomy IT. According to its website, CyberLife is a "a customer-focused IT services and software company, specializing in AI centric business software, IT management consulting, outsourced managed services, and innovative application/process automation."

48.     In or about early November 2023, Anatomy IT learned that both Piazza and Johnson had solicited business from at least three of Anatomy IT's provider practices, in direct violation of their restrictive covenants.

49.     Upon information and belief, the names and corresponding contact information for the Anatomy IT clients that were unlawfully solicited are not publicly available.  Upon further information and belief, Piazza and Johnson obtained this and other information—including the clients' preferences and information regarding their current and past contracts with Anatomy IT— through their employment with Anatomy IT, and intentionally took that information with them to CyberLife to unfairly compete against Anatomy IT.

50.     By way of example only, on October 5, 2023, Piazza, with Johnson's knowledge and at his direction, sent an email to a client of Anatomy IT that had been procured through SMB. In the email, Piazza expressly indicated that he had worked with the client through his employment with Anatomy IT (then SMB) and then proceeded to solicit the client's business for CyberLife:

> I'm reaching out to you today to share with you that I have joined a company called CyberLife as their Director of Engineering. CyberLife is a small, family-owned company, specializing in technology services, IT support, cyber security, and artificial intelligence. We have entered the New England market and serve clients here now.
>
> I need to ask you a simple question. Are you happy with the support and service you are receiving from your current provider? If you are satisfied with your current provider, that's wonderful! However, if your customer experience with your current provider is less than what it should be, would you be open to having a conversation with me to discuss the possibility of us working together again? If you are interested, it would be my pleasure to take you out for lunch to talk about your company's needs. I look forward to speaking with you very soon!

51.     Johnson sent an email to that same client on October 18, 2023 following up on

Piazza's correspondence, and again approximately two weeks later on October 30, 2023.  In the first email, Johnson asked if the client would be "open to having a conversation with [him and Piazza] about [the client's] technical support."   In the second email, Johnson expressly acknowledged that Anatomy IT was the client's managed services provider, but nonetheless solicited its business:

> . . . The purpose for all this contact is to offer up our company's IT support and services for your organization. I know you already have an IT company that you can call for support, but in case you aren't satisfied with the level of service you are receiving from them, CyberLife is an excellent alternative.

> Can we schedule a call to discuss a possible switch in service providers?  Please let me know.

52.     Following this brazen and targeted email campaign, the solicited client notified Anatomy IT that it would not be renewing its managed services contract.

53.     As another example, on November 10, 2023, Piazza emailed another Anatomy IT client that had been procured through SMB, again with Johnson's knowledge and at his direction. In the email, Piazza acknowledged having gained access to intimate details regarding the client's business by virtue of his employment with Anatomy IT.  He also acknowledged, consistent with the solicitation emails referenced above, that Anatomy IT was the client's managed services provider, yet proceeded to solicit its business anyway:

> Hi [name], [name], and [name]!

> Im [sic] reaching out as I used to work with you all the time back when SMB was still around. I am still very familar [sic] with the intricacies of [client's] phone systems, cameras, and network setup . . . .  Since SMB has faded, Eric and I started our own MSP focused on customer service, and delivering long term solutions to our clients. We want to make sure our clients know us, and we know our clients needs so we can use technology to make their quality of life better.

> We are a local shop . . . and would love to hear if you are having any IT problems or hardships. CyberLife is a fully staffed one stop technical shop for all your technology needs. If you interested in switching IT providers I would love to schedule a call with you and see exactly how we can make your life easier, so you can focus on your guests.

54.     On November 14, 2023, having learned of these and other unlawful customer solicitations, Anatomy IT's counsel served both Johnson and Piazza with letters demanding that they immediately cease and desist from violating their post-employment obligations to Anatomy IT, including their non-disclosure and non-solicitation obligations.  Anatomy IT also demanded that Defendants immediately produce documents so that it could determine the extent of Defendants' conversion and misappropriation of Anatomy's IT's confidential, proprietary, and trade secret information, and ensure the safe return of same.

55.     Over the next several weeks, Anatomy IT's counsel engaged in good faith with counsel for Defendants to reach an agreement that would ensure the return of Anatomy IT's confidential and trade secret information, as well as Johnson's and Piazza's compliance with their post-employment obligations, without resort to litigation.

56.     However, on or about January 26, 2024, Anatomy IT learned that Piazza had solicited yet another Anatomy IT client that December—weeks *after* Anatomy IT had served Piazza and Johnson with the cease-and-desist letters that expressly put them on notice that soliciting Anatomy IT's clients was a direct violation of their restrictive covenants.

57.     Upon information and belief, in yet another brazen and intentional attempt to unlawfully solicit Anatomy IT's clients, Piazza told the client that he no longer owed any post-employment obligations to Anatomy IT.  That was a lie.

58.     Upon information and belief, Defendants continue to unlawfully solicit Anatomy IT's clients and/or to otherwise use Anatomy IT's confidential and trade secret information for their own benefit.  Indeed, Anatomy IT recently learned that Piazza, with Johnson's knowledge and at his direction, solicited another Anatomy IT client to transition its business to CyberLife in the beginning months of 2024.

59.     As of the date of this filing, ten Anatomy IT clients have been unlawfully solicited by Defendants, seven of which have since terminated their relationships with Anatomy IT.

60.     Upon information and belief, at least two of these clients have since been converted to CyberLife, one of which terminated its Anatomy IT contract early in favor of a contract with

CyberLife.

## COUNT I: BREACH OF CONTRACT

61.     Anatomy IT hereby repeats, realleges, and incorporates by reference each of foregoing allegations as if fully set forth herein.

62.     The Agreements that Johnson and Piazza entered into with Anatomy IT constitute valid and enforceable contracts.

63.     Anatomy IT performed all of the duties and obligations it agreed to and owed to Johnson and Piazza under the Agreements.

64.     The post-employment activity restrictions contained in those Agreements are reasonable in both scope and duration, and are necessary to protect Anatomy IT's protectable interests in its confidential information, as well as its business relationships, goodwill, and other legitimate business interests.

65.     Johnson and Piazza have breached, and continue to breach, their post-employment contractual obligations owing to Anatomy IT by misusing Anatomy's confidential and proprietary information, interfering with Anatomy IT's relationships with its customers, and/or failing or refusing to return Anatomy IT's information and property upon their termination.

66.     As a result of these breaches of contract, Anatomy IT has been irreparably injured, and continues to face irreparable injury.  Not only has Anatomy IT already lost seven of the clients Defendants solicited in violation of their restrictive covenants, but Anatomy IT continues to be threatened with losing the value of its confidential and proprietary information, additional customer relationships, and goodwill.  Anatomy IT seeks actual, incidental, compensatory, punitive, and consequential damages, along with its reasonable attorneys' fees and costs.

## COUNT II: TRADE SECRET MISAPPROPRIATION IN VIOLATION OF THE FEDERAL DEFEND TRADE SECRETS ACT AND NEW YORK LAW

67.     Anatomy IT hereby repeats, realleges, and incorporates by reference each of foregoing allegations as if fully set forth herein.

68.     Anatomy IT possesses information of independent economic value that is not

available to the public, not readily ascertainable by proper means, and could convey both an economic benefit and a competitive advantage to another person that obtains it.

69.     This information includes, but is not limited to, Anatomy IT's customer lists which contain, *inter alia*, customer contact information, as well as other highly sensitive information regarding each customer's unique relationship with Anatomy IT.

70.     This information constitutes a trade secret.

71.     Anatomy IT undertakes reasonable measures to maintain the secrecy of its trade secrets, including: (a) asking employees to sign the Agreements, which contain covenants that protect Anatomy IT's confidential information and require the immediate return of Anatomy IT property upon termination; (b) asking employees to sign an employee handbook during onboarding, which reiterates their confidentiality and non-disclosure obligations; and (c) restricting access to its computerized information through the use of passwords and dual authentication.

72.     Johnson and Piazza had substantial and ongoing access to Anatomy IT's trade secrets by virtue of their employment with Anatomy IT.

73.     Upon information and belief, both Johnson and Piazza are using, taking advantage of, and/or disclosing Anatomy IT's trade secrets for the benefit of CyberLife, and to unjustifiably interfere with Anatomy IT's business.

74.     By using Anatomy IT's trade secrets, Defendants have created an unfair advantage for CyberLife in targeting Anatomy IT's clients, effectively creating a roadmap for converting Anatomy IT's customer relationships and goodwill, at Anatomy IT's expense.

75.     Defendants have misappropriated Anatomy IT's trade secrets through willful, malicious, and improper means.

76.     This constitutes a violation of both the DTSA and New York law.

77.     As a result of Defendants' misappropriation of Anatomy IT's trade secrets, Anatomy IT has been injured and will continue to be damaged by losses of, among other things, clients, revenues, valuable proprietary information, and goodwill.

## COUNT III: TORTIOUS INTERFERENCE
## WITH PROSPECTIVE ECONOMIC ADVANTAGE

78.     Anatomy IT hereby repeats, realleges, and incorporates by reference each of foregoing allegations as if fully set forth herein.

79.     Until the events giving rise to this action, Anatomy IT has maintained valid business relationships with its customers.

80.     Anatomy IT's relationships generated goodwill among these customers and created an expectation of future business.  The knowledge Defendants have gained about these customers and the business terms of their relationships are confidential and proprietary business information.

81.     As former Anatomy IT employees, Johnson and Piazza are and remain aware of Anatomy IT's customer relationships, the unique knowledge Anatomy IT possesses about these customers, and the business terms of Anatomy IT's relationships with these customers.

82.     Defendants have maliciously and tortiously misappropriated and unlawfully used the information that Johnson and Piazza acquired as Anatomy IT employees to divert business from Anatomy IT to CyberLife, intentionally and unjustifiably interfering with Anatomy IT's business relationships.

83.     As a direct and proximate result of Defendants' tortious interference with Anatomy IT's business relationships with its customers, at least seven (7) Anatomy IT clients have severed their business relationships with Anatomy IT.

84.     Accordingly, Anatomy IT has been irreparably injured and faces further irreparable injury, as it remains threatened with losing current and prospective customers, its competitive advantage, and goodwill.

## COUNT IV: TORTIOUS INTERFERENCE WITH CONTRACT

85.     Anatomy IT hereby repeats, realleges, and incorporates by reference each of the foregoing allegations as if fully set forth herein.

86.     Until the events giving rise to this action, Anatomy IT had a valid and enforceable contract with a specific customer for the provision of managed IT and ancillary products and

services, which was slated to terminate on December 20, 2024.

87.     As former Anatomy IT employees, Johnson and Piazza are and remain aware of Anatomy IT's customer relationships, including the relationships that formed the basis of the contract referenced above.

88.     Despite Johnson's and Piazza's post-employment restrictions expressly prohibiting them from contacting Anatomy IT's clients and from using Anatomy IT's confidential and proprietary information, and with full knowledge that those restrictions remained in full force and effect, Johnson and Piazza solicited Anatomy IT's client.

89.     Johnson and Piazza did so intentionally, without justification, and with the malicious motive of inducing the client to sever its contract with Anatomy IT in favor of a new contract with CyberLife for the provision of the same or similar products and services.

90.     Johnson and Piazza intentionally interfered with Anatomy IT's business for the benefit of themselves and CyberLife, and did so through the use of improperly obtained confidential and proprietary information.

91.     As a direct and proximate result of Defendants' tortious conduct, the Anatomy IT client referenced above severed its contract with Anatomy IT on or about October 30, 2023, with nearly fourteen (14) months left in its contract.

92.     Upon information and belief, the severed client is now a customer of CyberLife.

93.     Anatomy IT has suffered irreparable harm, including but not limited to the loss of this longstanding client with whom it had a contractual relationship, as well as its competitive advantage and goodwill, as a result of Defendants' tortious interference.

## COUNT V: UNFAIR COMPETITION

94.     Anatomy IT hereby repeats, realleges, and incorporates by reference each of foregoing allegations as if fully set forth herein.

95.     By virtue of their acts and omissions, Defendants have unfairly misappropriated the trade secrets, proprietary information, and existing and prospective customer and client relationships of Anatomy IT, have sought unfairly to capitalize on the goodwill of Anatomy IT,

and have employed unfair and/or deceptive business practices intended to hider, delay, or prevent Anatomy IT from fairly competing with Defendants.

96.     Defendants have engaged in such acts or omissions maliciously, in bad faith, and for the sole purpose of inflicting harm on Anatomy IT, or to benefit themselves at the expense of Anatomy IT.

97.     As a result, Anatomy IT has suffered, and will continue to suffer, injury, damages, and irreparable harm.

## COUNT VI: INJUNCTIVE RELIEF

98.     Anatomy IT hereby repeats, realleges, and incorporates by reference each of foregoing allegations as if fully set forth herein.

99.     By virtue of the foregoing, Anatomy IT has demonstrated a likelihood of success on the merits and that a balancing of the equities favors the issuance of an injunction against Defendants.

100.    Unless Defendants are temporarily, preliminarily, and permanently enjoined from the forgoing conduct, Anatomy IT will be irreparably harmed by, *inter alia*: (a) the continued disclosure and misuse of its trade secrets, customer lists, and/or other confidential information that is the sole property of Anatomy IT and/or its clients; (b) the loss of the confidentiality of the information contained in its customers' records; (c) the loss of client confidence, goodwill, and business reputation; (d) the loss of client and prospective client relationships; and (e) present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

## PRAYER FOR RELIEF

WHEREFORE, Anatomy IT seeks judgment in its favor and an Order against Defendants that grants the following relief:

   a. Permanently enjoining Defendants, and all parties in active concert or participation with them, from directly or indirectly: (i) using or disclosing any of Anatomy IT's confidential, proprietary and/or trade secret information; (ii) soliciting Anatomy

IT's clients; or (iii) otherwise engaging in any conduct which violates the Agreements;

b.  Ordering Defendants and all parties in active concert or participation with them to return to Anatomy IT all originals and copies of all files, devices and/or documents that contain or relate to Anatomy IT's confidential and proprietary information, including without limitation, all computers, electronic media, data, iPhones and electronic storage devices;

c.  Awarding Anatomy IT actual, incidental, compensatory, and consequential damages to be proven at trial;

d.  Awarding Anatomy IT exemplary or punitive damages assessed against Defendants, both pursuant to the DTSA and New York law, for Defendants' willful and malicious trade secret misappropriation and tortious conduct;

e.  Awarding Anatomy IT damages assessed under the DTSA, including compensatory damages, unjust enrichment or restitution damages (disgorgement for ill-gotten gains) and reasonable royalty damages;

f.  Awarding Anatomy IT its costs and expenses incurred herein, including reasonable attorneys' fees (*see* Ex. B at § 17); and

g.  Awarding Anatomy IT such further relief as the Court deems necessary and just.

## **JURY TRIAL DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury in this action on all issues triable by a jury.

Dated: April 1, 2024                    Respectfully submitted,

_/s/ Dominique Kilmartin_
Dominique Kilmartin, Esq.
PASHMAN STEIN WALDER HAYDEN, P.C.
The Woolworth Building
233 Broadway, Suite 820
New York, NY 10279
(646) 828-8081

_Attorneys for Plaintiff Anatomy IT, LLC_