UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANATOMY IT, LLC,

                        Plaintiff,

    v.

CYBERLIFE SYSTEMS, INC., ERIC JOHNSON, and ADAM PIAZZA,

                        Defendants.

No. 24-CV-2460 (KMK)

ORDER

---

KENNETH M. KARAS, United States District Judge:

    Anatomy IT, LLC. ("Anatomy IT" or "Plaintiff") brings this Action against CyberLife Systems, Inc. ("CyberLife"), Eric Johnson ("Johnson"), and Adam Piazza ("Piazza," together with Johnson and Piazza, "Defendants"), stating various claims related to the alleged violation of Johnson's and Piazza's post-employment restrictive covenants. (*See generally* Compl. (Dkt. No. 1).) Before the Court is Plaintiff's ex parte Motion for a temporary restraining order ("TRO"). (*See* Pl's Ex-Parte Emergency Mot. ("Mot.") (Dkt. No. 6).) For the foregoing reasons, Plaintiffs' Motion is denied.

## I. Background

### A. Factual Background

    The following facts, relevant to this Motion, are taken from Plaintiff's Complaint. (*See* Compl.) Anatomy IT is a large and fasting-growing healthcare information technology ("IT") limited liability company, organized and existing under the laws of the State of New York, with its principal place of business in White Plains, New York. (Compl. ¶¶ 7, 14.) CyberLife is "a customer-focused IT services and software" corporation organized and existing under the laws of

the State of Delaware.  (*Id.* ¶¶ 8, 47.)  Plaintiff alleges on information and belief that CyberLife has its principal place of business in Minneapolis, Minnesota.  (*Id.* ¶ 8.)  Johnson is CyberLife's President and Chief Executive Officer ("CEO"), and previously served as Plaintiff's Vice President of Managed Services.  (*Id.* ¶¶ 9, 21.)  Plaintiff claims on information and belief that Johnson is a citizen of Minnesota, and is domiciled and resides in Princeton, Minnesota.  (*Id.* ¶ 9.)  Piazza is CyberLife's Vice President and Chief Technology Officer ("CTO"), and previously was employed by Plaintiff as a Senior Network Engineer.  (*Id.* ¶¶ 10, 24.)  Plaintiff states on information and belief that Piazza is a citizen of Connecticut, and is domiciled and resides in Milford, Connecticut.  (*Id.* ¶ 10.)

Johnson first began working for Anatomy IT in or about October 2021 when Anatomy IT engaged Johnson's company, CyberLife, LLC (a different entity than Defendant CyberLife), to perform a four-week consulting project for Anatomy IT's Central Services department.  (*Id.* ¶ 20.)  After Johnson completed the project, Anatomy IT hired Johnson to serve as the company's Vice President of Managed Services, effective December 6, 2021.  (*Id.* ¶ 21.)  In that role, Johnson was part of Anatomy IT's upper-management team and reported directly to the Company's CEO.  (*Id.* ¶ 21.)  Piazza began working for Anatomy IT approximately two months later in February 2022, when Anatomy IT's parent company purchased SMB Networks ("SMB"), a company for which Piazza had been working as a Senior IT Engineer.  (*Id.* ¶ 23.)  Following this transaction, Piazza became a Senior Network Engineer for Anatomy IT and signed an employment agreement to that effect on or about April 1, 2022.  (*Id.* ¶ 24.)  Plaintiff claims that as a part of their employment with Anatomy IT, both Johnson and Piazza executed agreements that contain certain narrowly tailored, post-employment restrictive covenants designed to protect Anatomy IT's goodwill, its longstanding customer relationships, and its

confidential and proprietary information.  (*Id.* ¶ 27.)  Plaintiff alleges that while employed by Anatomy IT, Johnson and Piazza had access to, and were required to know and use, Anatomy IT's confidential and trade secret information, including highly sensitive information regarding Anatomy IT's nationwide customer base.  (*Id.* ¶ 2.)

On or about January 6, 2023, Piazza separated from Anatomy IT.  (*Id.* ¶ 44.)  Approximately two months later, on or about March 7, 2023, Johnson also separated from Anatomy IT.  (*Id.* ¶ 45.)  On or about June 30, 2023, Johnson formed a new entity, CyberLife, and began operating the business as its President and CEO, with Piazza serving as Vice President and CTO.  (*Id.* ¶ 47.)  CyberLife markets itself as offering the same or similar services to Anatomy IT.  (*Id.* ¶ 47.)  Plaintiff asserts that Johnson and Piazza have unlawfully retained the confidential and proprietary client information they had access to during their employment with Anatomy IT, misappropriated it for their own benefit, and engaged in a targeted campaign to steal Anatomy IT's clients, customers, and accounts for CyberLife.  (*Id.*)

On November 14, 2023, after learning of Defendants' actions, Anatomy IT's counsel served Johnson and Piazza with letters demanding that they immediately cease and desist from violating their post-employment obligations to Anatomy IT.  (*Id.* ¶ 54.)  Thereafter, over the next several weeks, Anatomy IT's counsel engaged with counsel for Defendants to reach an agreement that would ensure the return of Anatomy IT's confidential and trade secret information, as well as Johnson's and Piazza's compliance with their post-employment obligations, without litigation.  (*Id.* ¶ 55.)  However, Plaintiffs contend that on or about January 26, 2024, Anatomy IT learned that Piazza had solicited yet another Anatomy IT client in December, after Anatomy IT had served Piazza and Johnson with the cease-and-desist letters.  (*Id.* ¶ 56.)  Moreover, Plaintiffs state, upon information and belief, that Defendants continue to

unlawfully solicit Anatomy IT's clients and/or to otherwise use Anatomy IT's confidential and trade secret information for their own benefit, including during early 2024.  (*Id.* ¶ 58.)  Overall, Plaintiffs allege that as of the date of the filing of its Complaint, Defendants have unlawfully solicited ten of Anatomy IT's clients, seven of those ten clients have severed their relationships with Anatomy IT, and two of the seven clients who severed their relationships with Anatomy IT have become clients of CyberLife.  (*Id.* ¶ 4.)

Plaintiff brings five claims against Defendants, including claims for: (1) breach of contract; (2) trade secret misappropriation in violation of the federal Defend Trade Secrets Act and New York law; (3) tortious interference with prospective economic advantage; (4) tortious interference with contract; and (5) unfair competition.  (*See id.* ¶¶ 61–97.)

B.  Procedural History

Plaintiff commenced the instant Action on April 1, 2024, (Compl.), requesting summonses, (Dkt. Nos. 3–5), which the Court issued on the same day, (Dkt. Nos. 12–14).  However, it appears that Plaintiff has not yet served Defendants.  (*See generally* Dkt. (no proof of service appears as required by Fed. R. Civ. P. 4(*l*)(1)).)  With its Complaint, Plaintiff also filed the instant Motion, requesting a TRO pending a preliminary injunction ("PI") hearing and expedited discovery.  (*See* Mot.; Pl.'s Mem. of Law in Supp. of Mot. ("Pl.'s Mem.") (Dkt. No. 7); Decl. of Jennifer Clarke in Supp. of Mot. ("Clarke Decl.") (Dkt. No. 8); Decl. of Judey Loignon in Supp. of Mot. ("Loignon Decl.") (Dkt. No. 9); Order to Show Cause ("Proposed TRO") (Dkt. No. 10).)

II.  Discussion

A.  Standard of Review

TROs are governed by the familiar standard for PIs.  *See Free Country Ltd. v. Drennen*, 235 F. Supp. 3d 559, 565 (S.D.N.Y. 2016) (noting that "[t]he standard for an entry of a TRO is

4

essentially the same as for a preliminary injunction," except that TROs are often granted ex parte prior to extensive discovery); *accord Rosa v. Pathstone Corp.*, No. 23-CV-1071, 2023 WL 6813100, at *2 (S.D.N.Y. Oct. 13, 2023). "A party seeking a preliminary injunction must demonstrate: (1) a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor; (2) a likelihood of irreparable injury in the absence of an injunction; (3) that the balance of hardships tips in the plaintiff's favor; and (4) that the public interest would not be disserved by the issuance of an injunction." *Benihana, Inc. v. Benihana of Tokyo*, 784 F.3d 887, 895 (2d Cir. 2015) (alteration adopted) (quotation marks omitted).

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see also Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) ("[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." (emphasis and quotation marks omitted)); *Free Country Ltd.*, 235 F. Supp. 3d at 565 ("[A] TRO, perhaps even more so than a preliminary injunction, is an extraordinary and drastic remedy . . . ." (quotation marks omitted)). "The purpose of a preliminary injunction is not to award the movant the ultimate relief sought in the suit but is only to preserve the status quo by preventing during the pendency of the suit the occurrence of that irreparable sort of harm which the movant fears will occur." *Kane v. De Blasio*, 19 F.4th 152, 163 (2d Cir. 2021) (quotation marks omitted). "These standards apply with equal force where defendants have not appeared and the motion for a preliminary injunction is unopposed." *Roku Inc. v. Individuals, Corps., Ltd. Liab. Corps., P'Ships, & Unincorporated Ass'ns*, No. 22-CV-850, 2022 WL 1598208, at *2 (S.D.N.Y. May 20, 2022); *see also JTH Tax, Inc. v. Sawhney*, No. 19-CV-4035, 2019 WL

3051760, at *1–2 (S.D.N.Y. July 11, 2019) (applying these standards to an unopposed PI motion).

### B.  Plaintiffs' Ex Parte Motion

Although preliminary relief may be granted ex parte, plaintiffs must meet additional requirements to proceed without notice.  Federal Rule of Civil Procedure 65(b)(1) allows a court to issue ex parte orders "only if":

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

*Id*.; *accord Zapoteco v. Rapi, Inc*., No. 20-CV-6335, 2021 WL 10717527, at *1 (E.D.N.Y. Jan. 8, 2021).  Moreover, Local Rule 6.1(b) states that:  "No ex parte order, or order to show cause to bring on a motion, will be granted except upon a clear and specific showing by affidavit of good and sufficient reasons why a procedure other than by notice of motion is necessary . . . ."  *Id*. (italics omitted); *accord City of New York v. FedEx Ground Package Sys., Inc*., No. 13-CV-9173, 2015 WL 783363, at *2 (S.D.N.Y. Feb. 24, 2015).  "As the Supreme Court has explained, the 'stringent restrictions' placed on ex-parte temporary restraining orders, 'reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute.'"  *Zapoteco*, 2021 WL 10717527, at *1 (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty*., 415 U.S. 423, 438–39 (1974)).

For two reasons, Plaintiff falls short of these requirements.  First, Plaintiff does not explain what injury will result "before the adverse party can be heard."  *See* Fed. R.

6

Civ. P. 65(b)(1)(A).  Specifically, Plaintiff fails to provide any argument or to demonstrate "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65 (b)(1); *see also Omnistone Corp. v. Cuomo*, 485 F. Supp. 3d 365 (E.D.N.Y. 2020) (denying TRO where business failed to demonstrate that it would suffer immediate irreparable harm absent TRO).  Moreover, the timing of Plaintiff's Motion undermines the notion that hearing from Defendants would result in harm.  Indeed, Plaintiff has been aware of Defendants' alleged unlawful activity since at least November 2023.  (*See* Compl. ¶¶ 48 (alleging that in or about early November 2023, Anatomy IT learned that both Piazza and Johnson had solicited business from at least three of Anatomy IT's provider practices, in direct violation of their restrictive covenants).)  And even taking into account Plaintiff's efforts to resolve these issues without litigation, Plaintiff learned by the end of January 2024 that such efforts were unsuccessful.  (*See id.* ¶ 56 (alleging that following Plaintiff's good faith efforts to engage with Defendants' counsel to reach an agreement, Plaintiff learned "on or about January 26, 2024" that "Piazza had solicited yet another Anatomy IT client [in] December [2023]").)  Nevertheless, Plaintiff still waited at least two months before filing the instant Motion.  *See Chan v. Chinese-Am. Plan. Council Home Attendant Program, Inc.*, No. 15-CV-9605, 2016 WL 3004516, at *1 (S.D.N.Y. Jan. 21, 2016) ("The failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion of preliminary relief and suggests that there is, in fact, no irreparable injury." (alteration adopted) (quoting *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995)); *see also City of New York by & through FDNY v. Henriquez*, No. 22-CV-3190, 2023 WL 2186340, at *10 (E.D.N.Y. Feb. 23, 2023),

7

*reconsideration denied*, No. 22-CV-3190, 2023 WL 4490287 (E.D.N.Y. Apr. 16, 2023) (same). Accordingly, Plaintiff has failed to satisfy the requirements of Rule 65(b). *See Gardner-Alfred v. Fed. Rsrv. Bank of New York*, No. 22-CV-1585, 2022 WL 748249, at *2 (S.D.N.Y. Mar. 11, 2022) (dissolving ex parte TRO because the plaintiffs "did not explain why any irreparable injury would result before the adverse party [could] be heard" and because they "provide[d] no indication as to why [the TRO] could not have been filed earlier in order to afford the [defendant] an opportunity to be heard"); *see also Rabbi Jacob Joseph School v. Province of Mendoza*, 342 F. Supp. 2d 124, 127 (E.D.N.Y. 2004) (dissolving TRO where the plaintiff did not "declar[e,] in an affidavit or verified complaint that immediate and irreparable harm would result" before the defendant "could be heard").

Second, Plaintiff does not comply with Local Rule 6.1(b)'s requirement to provide "good and sufficient reasons" why notice is not necessary. *See id*.; *see also* Fed. R. Civ. P. 65(b)(1)(B) (stating that "the movant's attorney" must explain why notice "should not be required" to obtain ex parte order). In fact, Plaintiff fails entirely to provide any such reason, and to the contrary, states that Johnson and Piazza "were notified of the pending action and Anatomy IT's intention to seek emergency relief by email on April 1, 2024," and that "[u]pon filing, Anatomy IT will also serve a copy of this application on Defendants via email." (Mot. at 1.) Such a statement establishes that Defendants know about this proceeding or will shortly, which removes any need to keep it secret. Plaintiffs have therefore failed to provide "sufficient reasons" to proceed ex parte. *See Chevron Corp. v. Donziger*, 37 F. Supp. 3d 650, 652 & n,1 (S.D.N.Y. 2014) (denying emergency stay on Rule 6.1(b) grounds because the plaintiff failed to show

8

irreparable injury "in the period between the making of the motion and its disposition on a schedule consistent with the rules," and because their claims of imminent injury appeared to be "spun entirely out of whole cloth" (emphasis omitted)); *see also Propetrol Ltd. v. QMF Energy DMCC*, No. 24-CV-330, 2024 WL 691059, at *1 (S.D.N.Y. Feb. 20, 2024) (denying TRO without prejudice for failure to comply with Local Rule 6.1(b)); *Mister Softee, Inc. v. Valdez*, No. 01-CV-12742, 2002 WL 24473, at *1 (S.D.N.Y. Jan. 8, 2002) (declining to issue ex parte order to show cause where the plaintiff made no showing under Local Rule 6.1(b)).

Accordingly, Plaintiff's motion for a TRO is denied without prejudice. The Court will, however, enter an expedited schedule for review of Plaintiff's claims for preliminary relief.

### III.  Conclusion

For the aforementioned reasons: (1) Plaintiff's motion for a TRO is DENIED without prejudice in all respects; (2) Plaintiff is to serve the papers related to the application for the TRO/PI on Defendants by midnight on April 1, 2024; (3) Defendants shall submit their response papers by close of business on April 3, 2024; (4) Plaintiffs may submit a reply by close of business on April 5, 2024; and (5) the Court will have a telephonic oral argument for the motion for a PI on April 8, 2024 at 3:00 PM.

The Clerk of Court is respectfully directed to terminate the pending motion.  (Dkt. No. 6.)
SO ORDERED.

Dated:   April 1, 2024
         White Plains, New York

_____
KENNETH M. KARAS
United States District Judge